Roselle M. NEELY, Plaintiff

v.

BAR HARBOR BANKSHARES,
et al., Defendants.

No. 02–CV–98–B–S.

United States District Court,
D. Maine.

July 10, 2003.

See, also, 2003 WL 21349547.

**51**

Ralph A. Dyer, Law Offices of Ralph A. Dyer, James T. Kilbreth, Verrill & Dana, Portland, for Roselle M. Neely, Bar Harbor Bankshare, Bar Harbor Banking, and Trust Company, BTI Financial Group, Bar Harbor Trust Services, Block Capital Management, Dirigo Investments Inc.

Graydon Stevens, Kelly, Remmel & Zimmerman, Lee H. Bals, Marcus, Clegg & Mistretta, P.A., Portland, for Paul G Ahern, Bonnie R McFee, Frank Jansen, Brett S Miller.

**ORDER**

SINGAL, Chief Judge.

The co-trustee of an irrevocable trust brings a complaint against the former director and officer of various financial institutions alleging liability under federal and state statutory law and under state common law. Presently before the Court is Defendant's Motion for Summary Judgment (Docket # 35). For the reasons discussed below the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

I. STANDARD OF REVIEW

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). The Court views the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *McCarthy v. Northwest Airlines*, 56 F.3d 313, 315 (1st Cir.1995).

II. BACKGROUND

Plaintiff Roselle Neely ("Neely") created a trust ("Trust" or "Neely Trust") by an Irrevocable Trust Agreement dated May 1, 1972. In June 1999, Neely met with Paul Ahern ("Ahern"), the investment officer responsible for managing the Trust, and provided him with specific directions for the investment of the Trust. Presently, Neely asserts that her specific directions for conservative investment were not followed and that the Trust was, instead, invested according to a growth intensive model as part of a scheme to generate fees. The undisputed relevant facts are as follows.

Beginning in December 1983, Bar Harbor Banking & Trust Company ("BHBT")

assumed the role as co-trustee for the administration of the Neely Trust. In early 2000, however, BHBT's parent company, Bar Harbor Bankshares ("Bankshares"), re-organized BHBT's trust and financial services business. Pursuant to the reorganization, Bankshares formed BTI Financial Group ("BTI") as a subsidiary. BTI then further formed three of its own subsidiaries, Bar Harbor Trust Services ("BHTS"), Block Capital Management ("Block"), and Dirigo Investments, Inc. ("Dirigo"). BHTS acquired BHBT's trust and financial services business, thereby assuming BHBT's fiduciary capacities and obligations. In addition, Block became the registered investment adviser, and Dirigo became the broker-dealer for all trades initiated by Block.

Subsequent to the restructuring, Block established a growth-oriented model to invest the equity portfolios of various trusts. Block's investment committee selected the stocks that would be part of the model based on their growth potential and reviewed the individual stock investments on a weekly basis. Approximately twenty of the larger trust accounts under BHTS's management were placed "on the model." (*See* Pl.'s Resp. to Defs.' Statement of Material Facts at ¶ 11.4.10 (Docket # 47).) Approximately forty more trust accounts were added in subsequent months. The Neely Trust was among the sixty accounts put on the model. All the trusts placed on the model were automatically traded, barring some unique constraints in an individual portfolio. Virtually all of the trades for trust investments were made through Dirigo for a fee.

At all relevant times, Defendant Bonnie McFee ("McFee") was the President and Chief Executive Officer of Dirigo and was vested with responsibility "for supervision and management of all Dirigo's day-to-day general business operations and such other responsibilities and duties, consistent with [her] position." (*See* Pl.'s Resp. to Def. Bonnie McFee's Statement of Material Facts at ¶ 6 (Docket # 45).) In addition, McFee was the Vice Chair of BTI's Board of Directors and the Chairperson of all of BTI's committees responsible for strategic planning. Finally, McFee was a senior executive officer at Block with the title Managing Director and a member of Block's investment committee. As Block's Managing Director, McFee assisted the company's Chief Executive Officer in carrying out his supervisory responsibilities and duties.

The Trust started declining in value beginning in 2000, and continuing into 2001. At that time, Neely began raising a number of questions as to the Trust's management. In October 2001, after learning that the Trust had been invested on the growth intensive model, Neely requested that BHTS stop trading on her account. In early 2002, Neely filed suit in Probate Court seeking to replace BHTS as co-trustee. The Probate Court approved the substitution of Maine Bank & Trust Company for BHTS as co-trustee.

Neely now brings an action against McFee alleging vicarious liability as a "controlling person" under section 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a) (2003), (Counts I and II) and section 10605(3) of the Revised Maine Securities Act, 32 M.R.S.A. § 10605(3) (2003), (Count IV). In addition, Neely's Complaint alleges several state common law violations, including liability for interference with contract (Count VI), conversion (Count VII), common law fraud and deceit (Count VIII) and aiding and abetting breach of fiduciary duty (Count X). In response, McFee has brought a motion for summary judgment to dismiss all claims. The Court discusses whether Defendant is entitled to summary judg-

ment on Plaintiff's claims under federal and state statutory law before discussing the issues relevant to Plaintiff's claims under state common law.[1]

## III. DISCUSSION

### A. "Controlling Person" Liability (Counts I, II and IV)

Counts I, II and IV of Plaintiff's Complaint are premised on the theory that Defendant can be held liable as a "controlling person" under section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78t(a), and the analogous provision of the Revised Maine Securities Act, 32 M.R.S.A. § 10605(3), for the securities laws violations allegedly committed by the corporate Defendants.

■ To hold a defendant liable under either the federal or state statute, a plaintiff must establish a primary violation by the controlled entity and that the defendant was a "controlling person" within the meaning of the statute. 15 U.S.C. 78t(a); 32 M.R.S.A. § 10605(3); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 84 (1st Cir.2002). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to show that she acted in good faith.

The Court has already decided in its Order dated June 9, 2003, that there are material facts in dispute with regard to the corporate Defendants' primary liability under the federal and state securities laws. Accordingly, at this juncture the Court need only decide whether Defendant can properly be considered a "controlling person" with regard to the corporate Defendants and whether Defendant has established an affirmative defense.

### 1. Section 20(a) of the Securities Exchange Act of 1934 (Counts I and II)

■ Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Defendant argues that, for Plaintiff to establish that she was a "controlling person" within the meaning of this statute, Plaintiff must show that Defendant not only had actual control over the controlled entity but must also show that she was a culpable participant in the alleged illegal activity. According to Defendant, summary judgment should be granted in her favor because Plaintiff fails to establish either of these elements. The Court, however, disagrees.

In the securities context, "control" means "the possession, direct or indirect, of the power to direct or to cause the direction of the management and policies of [an entity], whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405(f) (2003); *Sheinkopf v. Stone*, 927 F.2d 1259, 1270 (1st Cir.1991). Officers and directors possess such potential ability to control. *See* Loftus C. Carson, *The Liability of Con-*

---

**1.** Plaintiff's Complaint also alleges claims against Bankshares, BHBT, BTI, BHTS, Block and Dirigo (collectively "corporate Defendants"). These claims include violations under section 10(b) of the Securities Ex-

change Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5 (2003), section 206 and 215 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6, 80b–15, and state common law.

*trolling Persons Under the Federal Securities Acts,* 72 Notre Dame L.Rev. 263, 282 (1997).

In addition, the First Circuit has declined to specifically address the issue of whether "culpable participation" is a required element of liability under section 20(a).[2] *See Aldridge,* 284 F.3d at 85 n. 6. Even if "culpable participation" is required, however, it appears from the First Circuit's decision in *Aldridge* that the test is met by a showing that Defendant was an active participant in the decision-making process. *See id.,* at 85 (finding that, in addition to some potential ability to control, a plaintiff must show that the alleged controlling person actually exercised direct control over the management and operations of the company). As Plaintiff correctly states, there are no First Circuit cases that require a showing of culpability beyond such active participation.

Here, Defendant was the President and Chief Executive Officer of Dirigo. As President and Chief Executive Officer, Defendant supervised and managed all of Dirigo's day-to-day general business operations. In addition, Defendant was the Vice Chair of BTI's Board of Directors and the Chairperson of all of BTI's committees responsible for strategic planning. Finally, Defendant was a senior executive officer at Block, with the title Managing Director, and a member of Block's investment committee. As Block's Managing Director, Defendant assisted the company's Chief Executive Officer in carrying out his supervisory responsibilities and duties. In these positions, Defendant possessed not only the general power to control the direction of management and company policy, but actually exercised such control. Accordingly, Plaintiff satisfies both the "control" and "culpable participation" elements. In light of the above discussion and the fact that Defendant has failed to establish an affirmative defense,[3] the Court denies Defendant's motion for summary judgment on Counts I and II and discusses Defendant's argument for summary judgment on Count IV.

### 2. Section 10605(3) of the Revised Maine Securities Act (Count IV)

■ Defendant argues that she is entitled to summary judgment on Count IV because she did not employ any "device, scheme or artifice to defraud," as prohibited by 32 M.R.S.A. §§ 10201 (2003)[4] and

---

**2.** Whether culpable participation is a required element of liability under section 20(a) has generated a great deal of legal debate. *Compare SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996) (applying such a requirement), *with Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1575 (9th Cir.1990) (rejecting such a requirement).

**3.** Defendant has not presented any evidence to show that she adequately discharged her supervisory responsibilities to ensure compliance with the federal securities laws. Accordingly, Defendant has failed to carry her burden of persuasion that she acted in good faith. *See Hollinger,* 914 F.2d at 1576.

**4.** 32 M.R.S.A. § 10201 provides in relevant part:

In connection with the offer, sale or purchase of any security, a person shall not, directly or indirectly:

1. Fraud. Employ any device, scheme or artifice to defraud;
2. Untrue statements, material omissions. Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
3. Deceptive practices. Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

10203 (2003)[5]. Defendant's argument, however, fails to fully respond to Plaintiff's claim. Contrary to what Defendant assumes, Plaintiff's claim in Count IV alleges vicarious "controlling person" liability in violation of 32 M.R.S.A. § 10605(3) and not the sections mentioned above.

32 M.R.S.A. § 10605(3) of the Revised Maine Securities Act provides:

> Every person who directly or indirectly controls another person liable under subsection 1[6] ... [and] every partner, officer or director of that other person ... is also liable jointly and severally with and to the same extent as that other person, unless the person otherwise secondarily liable under this Act proves that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Under this provision, Defendant is liable as a "controlling person" of Block, Dirigo and BTI unless she can show that she had no knowledge of the alleged violations of the Maine Securities Act by the corporate Defendants. As discussed above, Defendant fails to make this showing. Accordingly, the Court denies Defendant's motion for summary judgment on Count IV.

### B. Common Law Torts (Counts VI, VII, and VIII)

In addition to her claims under federal and state statutory law, Plaintiff brings various claims against Defendant under state common law, including tortious interference with an existing contract (Count VI), conversion (Count VII), fraud (Count VIII) and aiding and abetting (Count X). In response, Defendant argues that she is shielded from liability in light of the fact that she has never spoken with or had any dealings with Plaintiff or Plaintiff's Trust. The Court agrees with Defendant that the facts in the record are insufficient as a matter of law for purposes of establishing Defendant's direct liability under Counts VI, VII and VIII but disagrees with respect to Count X. The Court explains further below.

#### 1. Conversion (Count VII)

■ Count VII of Plaintiff's Complaint alleges a cause of action for conversion. In order to prove conversion, Plaintiff must establish that: 1) she had a property interest in the property; 2) she had the right to possession at the time of the alleged conversion; and 3) she made a demand for its return that was denied by the holder. *Withers v. Hackett*, 714 A.2d 798, 800 (Me.1998). Here, it is undisputed that Plaintiff never made a demand upon Defendant for the return of her property that was ultimately denied. In fact, Plaintiff's demand was made to Bar Harbor Trust Services and not Defendant. Accordingly, the Court grants summary judgment on this count in favor of Defendant.

#### 2. Fraud (Count VIII)

■ Count VIII of Plaintiff's Complaint alleges a cause of action for fraud. Under Maine law, a person is liable for fraud if she "(1) makes a false representation (2) of

---

5. 32 M.R.S.A. § 10203 provides:
 Neither an investment adviser nor an employee of an investment adviser may, directly or indirectly, employ any device, scheme or artifice to defraud any client or engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any client.

6. 32 M.R.S.A. § 10605(1) provides that "[a]ny person who offers or sells a security in violation of section 10201 ... is liable to the person purchasing the security from that person."

a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage." *Letellier v. Small*, 400 A.2d 371, 376 (Me.1979). Here, the undisputed facts show that, prior to the commencement of the present action, Defendant had never communicated with Plaintiff and that she was not even aware of who Plaintiff was. Accordingly, Defendant could not have made any representations to Plaintiff for the purposes of fraudulently inducing her to act or refrain from acting. The Court, therefore, grants Defendant's motion for summary judgment on this count.

### 3. Tortious Interference with Contract (Count VI)

 Count VI of Plaintiff's Complaint states a claim for tortious interference with a contractual or other advantageous economic relation. Whenever a person, "by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful interference, that person can be liable in damages for such tortious interference." *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me.1989). As stated above, Plaintiff fails to establish the elements of fraud. In addition, there are no facts in the record to suggest intimidation. Accordingly, the Court grants Defendant's motion for summary judgment on this count.

### 4. Aiding and Abetting (Count X)

 Count X of Plaintiff's Complaint states a claim for aiding and abetting a tortious act. In Maine, the tort of aiding and abetting a tortious act is drawn from the Restatement of Torts. *FDIC v. S.*

*Prawer & Co.*, 829 F.Supp. 453, 457 (D.Me. 1993). The Restatement (Second) of Torts § 876 (2003) provides that:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other ... or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Here, the Court has already found, pursuant to its Order dated June 9, 2003, that material disputes exist with regard to Plaintiff's claims arising in tort, including fraud, conversion and tortious interference with contract. In addition, the Court now finds that in light of Defendant's status as an officer and director of BTI, Block and Dirigo and her regular involvement with Block's investment committee, there is a material issue as to Defendant's knowledge of and assistance in these alleged tortious activities. Accordingly, the Court denies Defendant's motion for summary judgment on this count.

### IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendants' Motion for Summary Judgment (Docket # 35) on Counts VI, VII and VIII but DENIES Defendants' motion on Counts I, II, IV and X.

SO ORDERED.