**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**S. PRAWER & CO., et al., Defendants,**

v.

**FLEET BANK OF MAINE and Recoll Management Corp., Third–Party Defendants.**

**Civ. No. 92–379–P–C.**

United States District Court, D. Maine.

July 28, 1993.

---

See also 829 F.Supp. 439.

Benjamin P. Zuckerman and Anne M. Dufour, Verrill & Dana, Portland, ME, for plaintiff-counterdefendant/third-party defendant.

Joseph J. Hahn, Bernstein, Shur, Sawyer, & Nelson, Portland, ME; Lawrence R. Kulig, Goldstein & Manello, Boston, MA; and Jeffrey Bennett, Herbert H. Bennett & Associates, P.A.; Gerald F. Petruccelli, Michael K. Martin, Petruccelli & Martin; and John S. Campbell, Poulos, Campbell & Zendzian, Portland, ME, for defendants-counterclaimants/third-party plaintiffs.

Thomas F. Monaghan, Monaghan, Leahy, Hochadel & Libby, Portland, ME, for third-party defendant.

## *MEMORANDUM AND ORDER ON DEFENDANTS ABRAMSON AND ABRAMSON, QUITTNER, ABRAMSON & MOFFA'S MOTION TO DISMISS*

GENE CARTER, Chief Judge.

In this action the Federal Deposit Insurance Corporation (FDIC) seeks recovery on seven promissory notes given by Defendant S. Prawer & Company to the FDIC's predecessor, Fleet Bank of Maine. In addition, the FDIC seeks to set aside or obtain damages under Maine's Uniform Fraudulent Transfers Act, 14 M.R.S.A. § 3571 *et seq.* (Supp.1992), and the Maine Uniform Commercial Code's Bulk Sales Act, 11 M.R.S.A. § 6–105 (1964), for the sale of the company's assets to C. & S. Wholesale Grocers, Inc. In Count V of the complaint [1], the FDIC asserts

---

1. The FDIC has filed two motions to amend the complaint to add a federal claim for fraudulent conveyance and to add and drop party defendants to some of the other claims. The Court *will address the motions to amend separately. The counts in the proposed amended complaint are numbered differently than their counterparts in the original complaint. The Court here refers*

a claim for tortious interference with a contractual relationship against Edwin Abramson and his firm, Abramson, Quittner, Abramson & Moffa, (the Abramson Defendants). Counts VI and VII of the complaint allege that the Abramson Defendants aided and abetted or conspired to effect the alleged fraudulent transfers between the Prawer Company and C & S. The Abramson Defendants' Motion to Dismiss Counts V, VI, and VII is now before the Court.

In passing on a motion to dismiss, the Court assumes that all of the factual allegations in the complaint are true, and draws all inferences in favor of the Plaintiffs. *Resolution Trust Corp. v. Driscoll,* 985 F.2d 44, 48 (1st Cir.1993). The Court need not, however, accept legal conclusions or bald assertions. *Id.* The complaint should not be dismissed unless it appears beyond doubt that Plaintiffs can prove no set of facts which would entitle them to relief. *Wyman v. Prime Discount Securities,* 819 F.Supp. 79, 81 (D.Me.1993).

### Counts VI and VII

The complaint alleges that the FDIC is a creditor of the Prawer Company and that the Company is in default on its obligations to the FDIC. While in default and insolvent, the Company is alleged to have sold substantially all of its assets to Defendant C & S. According to the complaint, the Abramson Defendants are the accountants and financial advisers of the Prawer Company and knew the company was insolvent when it transferred its assets. The complaint alleges that the Abramson Defendants attempted to hide the fact of the sale from the Company's creditors by encouraging the Company not to comply with the notice provisions of the Bulk Sales Act. It also alleges that upon consummating the asset sale, the Abramson Defendants used the proceeds to pay certain creditors in full, including some who were not creditors of the Prawer Company, but rather were creditors of the Prawer Brothers and their wives. Further, the Abramson Defendants are alleged to have participated in transferring the remaining proceeds of the

sale out of state to insulate them from creditors' actions.

### A. *Civil Conspiracy*

Count VI alleges that the Abramson Defendants and the Prawer Brothers conspired with the Prawer Company to violate the Bulk Sales Act and to fraudulently transfer the Prawer Company assets. Under Maine law, " 'conspiracy' fails as the basis for the imposition of civil liability absent the *actual commission* of some *independently recognized tort.*" *Cohen v. Bowdoin,* 288 A.2d 106, 110 (Me.1972).

The FDIC argues that a separate claim for conspiracy is available here because it has adequately alleged an independently recognized tort. While the FDIC is not specific in its memorandum as to what the torts are, paragraph 62 of the complaint alleges that the Abramson Defendants conspired to "engage in fraudulent transfers of S. Prawer & Company's assets, to violate the Bulk Sales Act and to fraudulently conceal assets from plaintiff." The Court is satisfied that violation of either Maine's Uniform Fraudulent Transfers Act or the Uniform Commercial Code's Bulk Sales Act is not a tort.[2] Furthermore, although there appears to be a tort of fraudulent concealment in Maine, it has not been alleged in this complaint.

The Maine Uniform Fraudulent Transfers Act, 14 M.R.S.A. § 3578, permits a "creditor" to avoid a fraudulent transfer, to attach an asset fraudulently transferred, or to invoke other equitable remedies including injunctions, appointment of receivers or damages. The Maine Act is derived in major part from the earlier Uniform Fraudulent Conveyance Act, which had not been enacted in Maine. Other courts have persuasively concluded that actions to set aside fraudulent conveyances under the Uniform Fraudulent Conveyance Act are in the nature of contract rather than tort actions. For example, in *United States v. Franklin National Bank,* 376 F.Supp. 378 (E.D.N.Y.1973), the court stated:

---

to the challenged counts by their numbers in the original complaint.

**2.** The Bulk Sales Act of the Maine Uniform Commercial Code was repealed by the Laws of 1991, ch. 636, effective June 30, 1992.

The New York Debtor and Creditor Law, ... which adopts verbatim the Uniform Fraudulent Conveyance Act, does not confer upon the creditor a right of action in tort against the grantee.... [T]he New York Court of Appeals, when faced with a complaint very similar to that before us in the instant case, held that the gravamen of the complaint was an action in equity to set aside the fraudulent conveyance. The fact that the complaint alleged actual intent on the part of the debtor to evade the creditor did not transform the complaint into an action to recover on the ground of actual fraud. Surely, the court stated

> the action is not one for actual fraud where a complete cause of action may be stated by a showing of the bare facts of a voluntary conveyance resulting in insolvency. Such a conveyance is but one of the two kinds which are deemed fraudulent by the operation of the statute. Both kinds are simply acts which are voidable at the behest of a creditor as a result of the statutory declaration. Whichever pattern the debtor may choose, the relief sought by the creditor is the same; to undo the transfer of title so as to bring within the ambit of execution those assets upon which the creditor is rightly entitled to levy. The fraud, such as it is, is only incidental to the right of the creditor to follow the assets of the debtor and obtain satisfaction of the debt. The gravamen of the cause of action in the case at bar is the ordinary right of a creditor to receive payment; this right has been implemented by the protection of legislation concerning the circumstances under which the creditor

may avail himself of assets which the debtor has transferred to others.

*United States v. Franklin National Bank,* 376 F.Supp. at 382 (citations omitted).

Many other courts have adopted this reasoning. *See, Branch v. Federal Deposit Insurance Corp.,* 825 F.Supp. 384 (D.Mass. 1993) (finding fraudulent conveyance claim not to be a tort claim for purposes of the Federal Tort Claims Act); *Federal Deposit Insurance Corp. v. Martinez Almodovar,* 671 F.Supp. 851, 871 (D.P.R.1987) (finding fraudulent conveyance claim not to be a tort for purposes of choosing appropriate statute of limitations); *Desmond v. Moffie,* 375 F.2d 742, 743 (1st Cir.1967) (finding fraudulent conveyance claim under Massachusetts Uniform Fraudulent Conveyance Act not to be a tort for purposes of choosing appropriate statute of limitations); *United States v. Neidorf,* 522 F.2d 916, 917–18 (9th Cir.1975). *But see In re Penn Packing Co.,* 42 B.R. 502, 505 (Bankr.E.D.Pa.1984) (fraudulent conveyance act claim a tort for purposes of choosing Pennsylvania statute of limitations); *In re Morse Tool,* 108 B.R. 384, 387 (Bankr. D.Mass.1989) (underlying basis of fraudulent conveyance action not necessarily contractual).[3] The Court is satisfied that the fraudulent conveyance claim alleged in this complaint is not a tort. Therefore, civil conspiracy to commit a fraudulent transfer cannot stand as an independent basis of civil liability.[4]

Claims under the Bulk Sales Act are similar in nature to fraudulent transfer claims. *See Brown Transport Corp. v. Street,* 194 Ga.App. 717, 719, 391 S.E.2d 699, 702 (Ga. App.1990) (purpose of Bulk Sales Act to protect creditors against fraudulent sales by

---

**3.** Prior to enactment of the Act in Maine, the Law Court too had viewed a fraudulent conveyance action as one sounding in contract rather than tort. *See Craig v. Webber,* 36 Me. 504, 508 (1853).

**4.** In the recent case of *Summers v. Hagen,* 852 P.2d 1165 (Alaska 1993), the Alaska Supreme Court allowed a claim for conspiracy to fraudulently convey property. The court adopted what it termed the minority rule, allowing one who has been legally harmed by a fraudulent transfer to recover damages from the party causing the harm where the existing equitable remedy of voiding the transfer is inadequate. The Alaska

court cited a decision which held that "because the Uniform Fraudulent Conveyance Act made fraudulent conveyances of the debtor's property to the grantee a definite legal wrong, that wrong could be the subject of a civil conspiracy." *Id.* The majority rule, rejected by the Alaska court, is that "a general creditor, without a lien has no legal right or interest in the debtor's property and cannot be legally injured by any action by way of conspiracy on the part of the debtor or others to dispose of his property in order to evade payment of his general obligations." *Id.* at n. 4.

debtors and to permit creditors to follow the goods of the debtor into the hands of the transferee); J. White and R. Summers, *Uniform Commercial Code,* § 19–1 at 754–58 (1980). Therefore, a Bulk Sales Act Claim would not be a tort to which an independent claim for conspiracy could be appended.

Although the FDIC alleges a conspiracy to conceal assets, it has not alleged a tort of fraudulent concealment. The independent tort of fraudulent concealment is a form of the tort of misrepresentation and addresses a failure to disclose material facts to someone to whom such a duty is owed. *See Broussard v. Caci–Federal, Inc.,* 780 F.2d 162, 164 (1st Cir.1986); *Atwood v. Chapman,* 68 Me. 38, 40 (1877). It does not deal with physical concealment, which is, however, addressed in the Uniform Fraudulent Transfers Act as one of the means of determining actual intent. 14 M.R.S.A. § 3575(2)(G). Since claims alleging violation of the Uniform Fraudulent Transfers Act and the Bulk Sales Act are not tort claims, and since the FDIC has alleged no other independent tort, the claim for conspiracy set forth against the Abramson Defendants and the Prawer Brothers in Count VI must fail as the basis for the imposition of civil liability. *Cohen v. Bowdoin,* 288 A.2d at 110.

### B. *Aiding and Abetting*

In Count VII the FDIC alleges that the Abramson Defendants and the Prawer Brothers aided and abetted the Prawer Company's torts of fraudulent transfer, fraudulent concealment and violation of the Bulk Sales Act. In Maine the tort of aiding and abetting a tortious action is drawn from section 876 of the Restatement of Torts. *See Barnes v. McGough,* 623 A.2d 144, 145 (Me.1993); *Bowers v. Allied Capital Corp.,* Civ. No. 91–0021–B, 1991 WL 335252 (D.Me. July 1, 1991). It is plain under that section that, as with a claim for civil conspiracy, there must be alleged tortious conduct by another before aiding and abetting liability can be imposed. As discussed above, the FDIC has not alleged an independent tort here to which the aiding and abetting liability can attach. *See Atlanta Shipping Corp. v. Chemical Bank,* 631 F.Supp. 335 (S.D.N.Y. 1986) (holding that because plaintiff in a fraudulent conveyance act seeks to reclaim the property conveyed and to avoid the transaction, the concept of aiding and abetting is meaningless).

Over a hundred years ago, the Maine legislature enacted a specific statute permitting an action against those who knowingly aid or assist a debtor in fraudulent transfer or concealment of property. *See* 14 M.R.S.A. § 3155 (1954); *Craig v. Webber,* 36 Me. at 505. That provision, however, was repealed with the enactment of the Uniform Fraudulent Transfers Act. Laws of Maine, ch. 641 § 2, (1985). The FDIC argues that an action for aiding and abetting still exists because the Act retained all principles of law and equity which were not displaced by provisions of the Act. 14 M.R.S.A. § 3581. It is clear, however, that aiding and abetting liability did not exist under the common law, but was entirely a creature of statute. The legislative record accompanying the enactment of the Uniform Fraudulent Transfer Act and the repeal of the aiding and abetting statute makes clear that the new Act supersedes the aiding and abetting provision. Legislative Record, Senate, at 876 (March 26, 1986). Since the legislature has not reenacted any provision for aiding and abetting liability for those assisting in fraudulent conveyances, Count VII must be dismissed.

### *Interference with a Contractual or Business Relationship*

Under Maine law a plaintiff in an action for tortious interference with a business relationship must show that the defendant, by fraud or intimidation, procured breach of an existing contract that would have continued but for such wrongful interference. *Pombriant v. Blue Cross/Blue Shield of Maine,* 562 A.2d 656, 659 (Me. 1989); *MacKerron v. Madura,* 445 A.2d 680, 683 (Me.1982).

Here, the FDIC has alleged contracts between its predecessor Fleet and the Prawer Company. It has alleged that the Prawer Brothers and the Abramson Defendants made implicit threats that they would dispose of the Prawer Company assets before paying on the Fleet notes if Fleet Bank did not, through Recoll, settle unrelated claims

against the Prawer Brothers (rather the Prawer Company). A later implicit threat was that the proceeds of the transfer of assets to C & S would be distributed to other creditors if Fleet, through Recoll, did not reduce its demands for payment on the Prawer Company notes.

Although Fleet has alleged a contract and a threat, it has not alleged that a breach of the contract was procured or induced by the threat, which is a strict requirement under Maine law. *Id.* Paragraph 58 alleges that the acts of the Abramson Defendants "induced and/or caused S. Prawer & Company not to perform its contractual obligations to Fleet Bank." The threats, however, were not alleged to have been directed at the Prawer Co., but rather at Fleet through its agent Recoll. There is also no allegation that Fleet or Recoll breached the contract or took anything less than expected under it because of the alleged intimidation by the Prawer Brothers and Abramson. Fleet is not alleged to have settled claims favorably to the Prawer Brothers (as opposed to the Prawer Company) in response to the threats. Nor is Fleet alleged to have compromised its claims against the Prawer Company as a result of threats or intimidation.

The FDIC also argues that its allegation of fraudulent transfer meets the requirement that fraud or intimidation be pled as an element of the tort of tortious interference. Again, the allegation is that the Prawer Company was induced or caused not to perform its contractual obligations to Fleet. Complaint, ¶ 59. Although the Prawer Brothers and Abramson are alleged to be the architects of the alleged fraudulent transfer of the Prawer Company assets, they are not alleged to have defrauded *the company* in order to procure a breach of the contracts with Fleet. Rather they are alleged to have participated in the fraudulent transfer *with* the company to the detriment of Fleet. As discussed above, tort liability for such aiding and abetting is not available.

Since the FDIC has not alleged the necessary causal link between either fraud or intimidation and the alleged failure by the Prawer Company to perform its contractual obligations, Count V fails to state a claim for tortious interference with actual or potential business or contractual relationships and must be dismissed.

Accordingly, it is *ORDERED*, that the Abramson Defendants' Motion to Dismiss Counts V, VI, and VII, be, and it is hereby, *GRANTED*. Counts V, VI, and VII of the complaint are hereby *DISMISSED*.[5]

*SO ORDERED.*

5. Although only the Abramson Defendants have filed this motion to dismiss, the reasoning adopted by the Court in determining the motion applies equally to the claims made in Counts V, VI, and VII against the Prawer Brothers. Accordingly, the Court has dismissed the counts as to all defendants.