865 So.2d 1272 (2004)
Lewis B. FREEMAN, etc., et al., Appellants,
v.
FIRST UNION NATIONAL BANK, etc., et al., Appellees.
No. SC03-896.
Supreme Court of Florida.
January 29, 2004.
*1273 Patrice A. Talisman of Hersch & Talisman, P.A., Miami, FL; Scott Silver of Silver Garvett & Henkel, Miami, FL; Robert C. Josefsberg, Miami, FL; Ervin Gonzalez of Colson, Hicks, Eidson, et al., Coral Gables, FL; and Steven Mishan, Miami, FL, for Appellants.
Elliot H. Scherker, Holly R. Skolnick, and Julissa Rodriguez of Greenberg Traurig, P.A., Miami, FL, for Appellees.
PER CURIAM.
We have for review a question of Florida law certified by the Eleventh Circuit Court of Appeals that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. Freeman v. First Union Nat'l, 329 F.3d 1231, 1234 (11th Cir.2003). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. The Court certified the question of whether Florida's Uniform Fraudulent Transfer Act created a cause of action for damages in favor of a creditor against an aider or abettor to a fraudulent transaction.[1] We answer the certified question in the negative for the reasons set forth in our analysis below.

FACTS

District Court
In federal district court, the creditor plaintiffs (hereinafter appellants) brought suit against First Union Bank (hereinafter First Union). Appellants sought monetary damages for First Union's role in an alleged fraudulent Ponzi scheme conducted *1274 by a company called Unique Gems.[2] The appellants alleged that First Union, as a banking institution servicing Unique Gems' financial transactions, aided and abetted in the fraudulent transfers of money by Unique Gems to the harm of Unique Gems' creditors.[3] The district court dismissed the claim with prejudice, citing the failure to state a cause of action under Florida law for the aiding and abetting claim against First Union. The district court held that Florida's Uniform Fraudulent Transfer Act (hereinafter FUFTA) only allows creditors to set aside fraudulent transfers under a theory of cancellation. The district court considered FUFTA to be similar to the fraudulent transfer provision of the Bankruptcy Code, and held that FUFTA does not provide for aider and abettor liability.
In its order, the district judge analyzed the purpose and function of the FUFTA, stating:
The equitable remedies identified under the UFTA only permit creditors to set aside fraudulent transfers made to transferees. Specifically, § 726.108(1) permits creditors to: (1) avoid a fraudulent transfer made to a transferee; (2) request that a court attach assets transferred to a transferee; (3) obtain an injunction that enjoins the disposition of assets by a transferee; and, (4) request that a receiver be appointed to assume control over assets transferred to a transferee.
Additionally, courts have held the UFTA is modeled after the fraudulent transfer provisions in the Bankruptcy Code.
(Citation and footnote omitted.)
In dismissing the claim for failure to state a cause of action under Florida law, the district court explained:
Theoretically, the claim requires Plaintiffs plead Defendants (1) had actual knowledge of the fraudulent transfers and (2) that they substantially assisted UGI, its affiliates, and/or principals in effecting the transfers. However, the Court notes the dearth of case law supporting *1275 such a claim. Moreover, as detailed supra, the Court recognizes the limitations of the UFTA in light of its available remedies; only permitting creditors to set aside fraudulent transfers made to transferees.... Each and every case cited by Plaintiffs recognizes aiding and abetting common law fraud, or another cause of action, but not an UFTA violation.... [A]ttaching common law aiding and abetting liability to UFTA violations is inapposite in light of the remedies available under the statute.
(Citation and footnotes omitted.) The creditors appealed.

Eleventh Circuit
On appeal from the district court's dismissal, the Eleventh Circuit noted that despite the lower court's holding, FUFTA differs from the Bankruptcy Code in important ways. Freeman, 329 F.3d at 1233-34. The Eleventh Circuit found that FUFTA is broader than the Bankruptcy Code because it includes a "catch-all" phrase providing for "any other relief the circumstances may require." Id. at 1233. The Eleventh Circuit also noted that in addition to the catchall phrase, FUFTA provides the court with broad equitable powers because it "unambiguously states that all common law remedies supplement its application." Id. at 1234. The Eleventh Circuit examined Florida case law, but ultimately concluded that "[t]he jointly filed aiding and abetting claim is problematic because the lower Florida courts have not expressly approved such a cause of action and the Florida Supreme Court has not yet examined this question." Id. at 1232 (footnote omitted). Thus, the Eleventh Circuit certified the following question to this Court: "Under Florida law, is there a cause of action for aiding and abetting a fraudulent transfer when the alleged aider-abettor is not a transferee?" Id. at 1234. We conclude that the creation of such an action was not contemplated by enactment of the statute.

FUFTA
The appellants argue that the certified question should be answered in the affirmative because they believe that FUFTA, specifically section 726.108(1)(c)3, Florida Statutes (2002), encompasses a separate tort for aiding and abetting a fraudulent transfer, with the wording "[a]ny other relief the circumstances may require." Accordingly, the appellants contend that FUFTA is broad enough to allow a claim for money damages against First Union, which allegedly facilitated the fraudulent transfer of money. The appellees respond that this Court should answer the certified question in the negative because the FUFTA is strictly limited to relief against a "transferee" and First Union was not a transferee in this case.[4]
We begin our analysis by considering the provisions of chapter 726, Florida Statutes, which codifies FUFTA and states in pertinent part:
726.105 Transfers fraudulent as to present and future creditors.
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if *1276 the debtor made the transfer or incurred the obligation:
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor;....
726.106 Transfers fraudulent as to present creditors.
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
726.108 Remedies of creditors.
(1) In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor, subject to the limitations in s. 726.109 may obtain:
(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
(b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;
(c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
1. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
2. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
3. Any other relief the circumstances may require.

§§ 726.105-.108, Fla. Stat. (2002) (emphasis added). Although the FUFTA statutory scheme provides a "catch-all" phrase that allows courts to award "other relief," we believe that the Legislature intended it to facilitate the use of the other remedies provided in the statute, rather than creating new and independent causes of action such as aider-abettor liability, as the appellants argue.
When considering legislative intent, this Court has consistently explained:
Our purpose in construing a statute is to give effect to the Legislature's intent. State v. J.M., 824 So.2d 105, 109 (Fla. 2002). In attempting to discern legislative intent, we first look to the actual language used in the statute. Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000). If the statutory language is unclear, we apply rules of statutory construction and explore legislative history to determine legislative intent. Id.; Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993).
BellSouth Telecommunications, Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003). On the face of the statute, there is no ambiguity with respect to whether FUFTA creates an independent cause of action for aiding-abetting liability. There simply is no language in FUFTA that suggests the creation of a distinct cause of action for aiding-abetting claims against non-transferees. Rather, it appears that FUFTA was intended to codify an existing but imprecise system whereby transfers that were intended to defraud creditors could be set aside.
*1277 For example, recently, in Friedman v. Heart Institute of Port St. Lucie, Inc., 863 So.2d 189 (Fla. 2003), this Court analyzed FUFTA, stating:
The applicable statutory provisions in this area of the law are exceedingly clear. A "creditor" who possesses a "claim" may seek a number of remedies to prevent the fraudulent transfer of assets. Among the remedies are avoidance of the transfer, attachment, an injunction, appointment of a receiver, and "any other relief the circumstances may require." § 726.108(1)(b), Fla. Stat. (2002). A transfer is fraudulent if made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." § 726.106(1), Fla. Stat. (2002).
To utilize the protections of chapter 726, however, a plaintiff must show that he or she has a "claim" which qualifies the party as a "creditor." See § 726.102(4), Fla. Stat. (2002). As defined in section 726.102, a "claim" is broadly constructed and "means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 726.102(3), Fla. Stat. (2002). Thus, as is universally accepted, as well as settled in Florida, "A `claim' under the Act may be maintained even though `contingent' and not yet reduced to judgment." Cook v. Pompano Shopper, Inc., 582 So.2d 37, 40 (Fla. 4th DCA 1991); see also Money v. Powell, 139 So.2d 702, 703 (Fla. 2d DCA 1962) ("In this state contingent creditors and tort claimants are as fully protected against fraudulent transfers as holders of absolute claims.").
Id. at 192. While this decision did not involve the issue we resolve today, our opinion demonstrates the narrow focus of the FUFTA and its limitations. We simply can see no language in FUFTA that suggests an intent to create an independent tort for damages.

CONCLUSION
To adopt the appellants' position in this case would be to expand the FUFTA beyond its facial application and in a manner that is outside the purpose and plain language of the statute. Consistent with this analysis we conclude that FUFTA was not intended to serve as a vehicle by which a creditor may bring a suit against a nontransferee party (like First Union in this case) for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer. Accordingly, we answer the certified question in the negative and return this case to the Eleventh Circuit.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The certified question provides: "Under Florida law, is there a cause of action for aiding and abetting a fraudulent transfer when the alleged aider-abettor is not a transferee?" Id. at 1234.
[2] The second amended complaint related that the Ponzi scheme was a pyramid-type scheme involving jewelry assembly. Specifically, investors obtained necklace-making kits (worth only about $100) from Unique Gems for a "deposit" of $3000. Once the investors assembled the necklaces, they were supposed to return them to Unique Gems and receive their deposit plus an additional $1800 per kit. Unique Gems did not market or sell the assembled necklaces, but instead made money through a layered-distribution network of assemblers. Unique Gems promised to pay current investors to recruit new investors to "deposit" money. The funds from the new investors were then used to repay the initial investors. The illusion of profits induced new investors to "deposit" money and caused older investors to reinvest.
[3] The second amended complaint related the following facts in support of the aiding and abetting claim against First Union: Unique Gems had its primary bank account at First Union. First Union knew that Unique Gems was engaging in illegal activities and continued to allow Unique Gems to wire transfer money to Liechtenstein even after the State filed a lawsuit against Unique Gems. After the State initiated the lawsuit, First Union informed Unique Gems in a letter dated February 21, 1997, that it would be closing its account in ten days. However, First Union did not close the account at the expiration of that time period. Subsequently, a court-ordered injunction was entered on March 5, 1997, freezing the account. First Union allowed Unique Gems to wire transfer a total of $6.6 million to Liechtenstein (into an account owned by a company called Pearls and Gems) between February 10, 1997, and March 5, 1997. On the same day the injunction was issued, First Union notified Unique Gems that it would close the account in thirty days. Even after the injunction was entered, First Union allowed Unique Gems to wire transfer $2 million to Liechtenstein. First Union did not close the account until July 24, 1997.
[4] We caution that our answer to the certified question in this case is confined to the context of FUFTA. We do not address whether relief is available under any other theory of liability or cause of action. See, e.g., Bankfirst v. UBS Paine Webber, Inc., 842 So.2d 155, 157 (Fla. 5th DCA 2003) (Harris, Senior Judge, dissenting) (stating that the non-transferee defendants "devised and implemented a plan by which the debtor was able to transfer his money" and opining, "I believe BankFirst stated a cause of action for civil conspiracy").