SUHRHEINRICH, Circuit Judge,
concurring in part and dissenting in part:
I disagree with the majority’s conclusion that the Amended Complaint states a claim for fraudulent transfer under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 et seq. (“FUFTA”), for the following reasons.
*817 First, as this court recently observed, “[m]ere conduits, such as lawyers and banks, do not have an affirmative duty to investigate the underlying actions or intentions of the transferor.” Martinez v. Hutton (In re Harwell), 628 F.3d 1312, 1324 (11th Cir.2010). Also, as this court has also observed — albeit in an unpublished decision but one that applies Florida law— allegations of “atypical transactions” “are insufficient under Florida law to trigger liability. Florida law does not require banking institutions to investigate transactions.” Lawrence v. Bank of Am., N.A., 455 Fed.Appx. 904, 907 (6th Cir.2012) (per curiam).
Second, a “recipient” is not the “initial transferee” unless it exercises some control or receives some benefit, such as in a debtor-creditor relationship, with the funds at issue. See Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 893 (7th Cir.1988) (“Although the Bankruptcy Code does not define “transferee”, and there is no legislative history on the point, we think the minimum requirement of status as a “transferee” is dominion over the money or other asset, the right to put the money to one’s own purposes”). Indeed, this Court has stated that: “When trustees seek recovery of allegedly fraudulent conveyances from banks, the outcome of the cases turn on whether the banks actually controlled the funds or merely served as conduits, holding money that was in fact controlled by either the transferor or the real transferee.” Nordberg v. Societe Generale (In re Chase & Sanborn Corp.), 848 F.2d 1196, 1200 (11th Cir.1988) (noting that a bank controls funds where it receives money from a debtor to pay off a debt owed to the bank).
Third, the Florida Supreme Court emphasized that “FUFTA was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party (like [the bank] in this case) for monetary damages arising from the non-transferee party’s alleged aiding-abetting of a fraudulent money transfer.” Freeman v. First Union Nat’l Bank, 865 So.2d 1272 (Fla.2004). In Freeman, the Florida Supreme Court rejected the creditors’ aiding and abetting fraudulent transfer claims against a bank after the bank transferred funds on behalf of a Ponzischemer, even after the schemer was sued and an injunction freezing the accounts at the bank had been issued.
Fourth, the Eleventh Circuit created the “mere conduit” equitable exception to fraudulent transfer liability “to prevent the unjust or inequitable result of holding an innocent transferee liable for fraudulent transfers where the innocent transferee is a mere conduit and had no control over the funds transferred.” Id. at 1324. See generally Jessica D. Gabel & Paul R. Hage, Who is a “Transferee” Under Section 550(a) of the Bankruptcy Code?: The Divide Over Dominion, Control and Good Faith in Applying the Mere Conduit Defense, 21 Norton J. Bankr.L. & Prac. 1 Art., at 6 (2012) (noting that “[r]egardless of the test employed, courts seem to agree that the term ‘transferee’ must mean something different from anyone who simply touches the avoided transfer, such as an agent or a courier.... [S]uch an approach tracks the function of the bankruptcy trustee’s avoiding powers: to recoup money from the real recipient.]” (internal quotation marks and citation omitted)).
Fifth, Florida law allows a court to consider affirmative defenses in resolving a motion to dismiss where the complaint “affirmatively and clearly shows the conclusive applicability of the defense to bar the action.” Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1277 (11th Cir.2004) (citations omitted).
*818 The Amended Complaint affirmatively shows that the defense applies at this stage (i.e. is apparent from the four corners of the complaint) because it does not allege facts establishing that the bank actually controlled the funds at issue, making the bank an initial transferee. It alleges simply that the bank knew, from its customs or policies, or should have known, based on atypical transactions, that the money transfers were part of a Ponzi scheme. Although the customer threatened with foreclosure by the bank is a sympathetic fact, this allegation does not even involve a transfer of funds by the debtor to the bank. Cf. Chase & Sanborn, 848 F.2d at 1199-1200 (noting that where a bank receives funds from a debtor to pay off a loan, the bank has control over the funds and is therefore an initial transferee). Thus, the Amended Complaint fails to satisfy Iqbal’s requirement that the plaintiff “plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Again, “the misconduct alleged” here is fraudulent transfer under FUFTA. Freeman makes clear that an aiding and abetting theory is not available under FUFTA, which is in essence what Perlman’s claims are, given the lack of control over the funds.
For these reasons, I would affirm the district court’s dismissal of the FUFTA claims.