**131 Nev., Advance Opinion 15**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE CADLE COMPANY, AN OHIO CORPORATION,<br>Appellant,<br>vs.<br>WOODS & ERICKSON, LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP,<br>Respondent. | No. 63382<br><br>**FILED**<br><br>MAR 26 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |
| THE CADLE COMPANY, AN OHIO CORPORATION,<br>Appellant,<br>vs.<br>WOODS & ERICKSON, LLP, A NEVADA LIMITED LIABILITY PARTNERSHIP,<br>Respondent. | No. 63790 |

Consolidated appeals from a district court judgment in a collection and fraudulent transfer action and from a post-judgment order awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Affirmed in part as modified and reversed in part.*

Adams Law Group and James R. Adams and Assly Sayyar, Las Vegas, for Appellant.

Royal & Miles, LLP, and Gregory A. Miles, Henderson, for Respondent.

10/8/15: Corrected per Letter to publishers. CT

15-09143

BEFORE THE COURT EN BANC.

## OPINION

By the Court, CHERRY, J.:

In this case, we consider whether, under Nevada's fraudulent transfer law, a nontransferee law firm may be held liable for its client's fraudulent transfers under the accessory liability theories of conspiracy, aiding and abetting, or concert of action. We hold that Nevada, like most other jurisdictions, does not recognize accessory liability for fraudulent transfers. We therefore affirm the district court's judgment in favor of the law firm. We further hold, however, that the district court abused its discretion by awarding costs to the law firm without sufficient evidence showing that each cost was reasonable, necessary, and actually incurred. Thus, we reverse, in part, the district court's post-judgment order awarding costs.

## FACTS AND PROCEDURAL HISTORY

In 2004, Robert Krause retained respondent law firm Woods & Erickson, LLP, for estate planning services. The following year, Woods & Erickson created for Krause various legal entities, including an asset protection trust, into which Krause eventually transferred his assets. Meanwhile, appellant The Cadle Company (Cadle) was attempting to collect on a California judgment against Krause. After learning of the transferred assets, Cadle sued Krause and Woods & Erickson in the underlying action, alleging that Krause had fraudulently transferred assets in order to escape execution of the judgment and that Woods & Erickson had unlawfully facilitated the fraudulent transfers.

The district court dismissed Cadle's claims against Woods & Erickson without prejudice. Cadle later filed a second amended complaint asserting claims for conspiracy, aiding and abetting, and concert of action against Woods & Erickson, all arising from the fraudulent transfers. After the district court denied Woods & Erickson's motion to dismiss the second amended complaint or for summary judgment, Woods & Erickson offered Cadle $8,000 to settle the claims, which Cadle refused. The case went to trial.

During the bench trial, Cadle called Robert Woods of Woods & Erickson to testify as a witness. Woods testified that, at the time Woods & Erickson performed Krause's estate planning, the firm was not aware of Cadle's judgment against Krause. Woods further testified that he discussed Cadle's judgment with Krause after he learned of it. Krause told Woods that the judgment was not valid and that Krause was going to take care of it. Woods testified that he informed Krause that transfers of assets into Krause's trust could be set aside by a creditor. After hearing the evidence, the district court found in favor of Cadle against Krause. Concluding, however, that Cadle had not shown clear and convincing evidence of Woods & Erickson's intent to defraud or deceive, the district court entered judgment in favor of Woods & Erickson on all claims.

After trial, Woods & Erickson filed a memorandum of costs. Cadle moved to retax costs, arguing that Woods & Erickson did not sufficiently document the purported costs. Woods & Erickson opposed the motion to retax, attaching additional documentation to support its request for costs. The documentation consisted of an affidavit stating the approximate number and cost of photocopies, a process server bill, bills for

deposition transcripts, filing fee invoices, and parking receipts. After a hearing, the district court awarded Woods & Erickson the costs it requested, reducing only the runner service costs.

Woods & Erickson also filed a motion for attorney fees, arguing that it was entitled to them because Cadle rejected its $8,000 offer of judgment. After argument, the district court found that Woods & Erickson's offer of judgment was reasonable in amount and timing, that Cadle was unreasonable in rejecting the offer, and that the amount of attorney fees sought by Woods & Erickson was reasonable. The court thus awarded Woods & Erickson attorney fees.

Cadle separately appealed the judgment and the award of costs and attorney fees. We consolidated the appeals.

## DISCUSSION

### Accessory liability for fraudulent transfers

Cadle argues that the district court erred because it required Cadle to show actual intent to defraud or deceive in order to establish its accessory liability claims. Woods & Erickson asserts that, regardless of intent, Nevada does not recognize common-law civil conspiracy, aiding and abetting, or concert of action in the context of fraudulent transfers.[1] We

---

[1]Cadle contends that this court does not have jurisdiction to address Woods & Erickson's argument because Cadle did not raise it on appeal and Woods & Erickson did not cross-appeal. "A respondent may, however, without cross-appealing, advance any argument in support of the judgment even if the district court rejected or did not consider the argument." *Ford v. Showboat Operating Co.*, 110 Nev. 752, 755, 877 P.2d 546, 548 (1994). And this court will affirm a correct decision even if it was decided for the wrong reasons. *Id.* at 756, 877 P.2d at 549. Thus, we may consider whether such claims exist in Nevada.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

agree with Woods & Erickson that nontransferees, *i.e.*, those who have not received or benefited from the fraudulently transferred property, are not subject to accessory liability for fraudulent transfer claims.

A majority of jurisdictions appear to agree that there is no accessory liability for fraudulent transfers, albeit for different reasons. *See GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 648-50 (E.D. Ky. 2012) (discussing the majority of courts' interpretation of accessory liability in the context of fraudulent transfers). Some courts reason that fraudulent transfers are not independent torts to which accessory liability can attach. *See FDIC v. S. Prawer & Co.*, 829 F. Supp. 453, 455-57 (D. Me. 1993).[2] In Nevada, however, civil conspiracy liability may attach where two or more persons undertake some concerted action with the intent to commit an unlawful objective, not necessarily a tort. *See Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). Hence, this reasoning is not applicable to Nevada law.

Other courts have rejected accessory liability because their respective state's fraudulent transfer statutes do not recognize claims against a nontransferee. *See FDIC v. Porco*, 552 N.E.2d 158, 160 (N.Y. 1990) (holding that the New York debtor and creditor statute did not

---

[2]*See also Wortley v. Camplin*, No. 01-122-P-H, 2001 WL 1568368, at *9 (D. Me. Dec. 10, 2001) (stating that "violation of Maine's Uniform Fraudulent Transfers Act . . . does not constitute a tort for purposes of liability for civil conspiracy" or aiding and abetting); *cf. Arena Dev. Grp., LLC v. Naegele Commc'ns, Inc.*, No. 06-2806 ADM/AJB, 2007 WL 2506431, at *5 (D. Minn. Aug. 30, 2007) ("[W]hether a fraudulent transfer under the UFTA is a tort is uncertain. Accordingly, [the defendant] can not be held personally liable for aiding and abetting or conspiring to commit a violation of the UFTA.").

create a remedy against nontransferees who have no control over the asset or have not benefited from the conveyance).[3] And a subset of these courts have reasoned that fraudulent transfer claims are traditionally claims for equitable relief, noting that it makes little sense to impose an equitable remedy against someone who never had possession of the property. *See, e.g., Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1148-49 (C.D. Cal. 2001); *GATX*, 879 F. Supp. 2d at 648. Likewise, federal courts making bankruptcy decisions have refused to create liability for nontransferees when statutes do not. *See Robinson v. Watts Detective Agency, Inc.*, 685 F. 2d 729, 737 (1st Cir. 1982); *Mack v. Newton*, 737 F.2d 1343, 1357-58, 1361 (5th Cir. 1984); *Jackson v. Star Sprinkler Corp.*, 575 F.2d 1223, 1234 (8th Cir. 1978).



---

[3]*See also GATX*, 879 F. Supp. 2d at 648; *In re Total Containment, Inc.*, 335 B.R. 589, 615-16 (Bankr. E.D. Pa. 2005) (predicting that Pennsylvania law does not hold nontransferees liable); *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, No. 1:03-CV-0132-DFH, 2004 WL 771230, at *14 (S.D. Ind. Mar. 24, 2004) (holding that the Indiana Uniform Fraudulent Transfer Act's savings clause (or "catch-all provision") permits courts to creatively construct equitable remedies but does not create a substantive right of action); *Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1148 (C.D. Cal. 2001) (holding that a nontransferee was not liable because California's Fraudulent Transfer Act only creates equitable remedies, not liability for damages); *FDIC v. White*, No. 3:96-CV-0560-P, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998) (holding that the Texas fraudulent conveyance statute does not create liability for nontransferee coconspirator and it does not permit a court to create new substantive rights of action); *Warne Invs., Ltd. v. Higgins*, 195 P.3d 645, 656 (Ariz. Ct. App. 2008) (holding that the Arizona catchall provision does not create liability for aiding and abetting); *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1276 (Fla. 2004) (reasoning that Florida's savings clause permitted the court to award other equitable relief but did not create new causes of action).

We find this second line of reasoning persuasive. Creditors do not possess *legal* claims for damages when they are the victims of fraudulent transfers. Instead, creditors have recourse in *equitable* proceedings in order to recover the property, or payment for its value, by which they are returned to their pre-transfer position. *See* NRS 112.210; NRS 112.220(2). Nevada law does not create a legal cause of action for damages in excess of the value of the property to be recovered.

As federal courts have recognized, the long-standing distinction between law and equity, though abolished in procedure, continues in substance. *Coca-Cola Co. v. Dixi-Cola Labs.*, 155 F.2d 59, 63 (4th Cir. 1946); 30A C.J.S. *Equity* § 8 (2007). A judgment for damages is a legal remedy, whereas other remedies, such as avoidance or attachment, are equitable remedies. *See* 30A C.J.S. *Equity* § 1 (2007). Nevada's fraudulent transfer statute creates equitable remedies including avoidance, attachment, and, subject to principles of equity and the rules of civil procedure, injunction, receivership, or other relief. *See* NRS 112.210. This is in accord with the general rule that "the relief to which a defrauded creditor is entitled in an action to set aside a fraudulent conveyance is limited to setting aside the conveyance of the property." 37 C.J.S. *Fraudulent Conveyances* § 203 (2008).[4] There is generally no

---

[4]History also shows that avoidance was the proper remedy for fraudulent transfers. A 1377 enactment declared that, if a debtor colluded with friends to avoid collection by transferring assets to them and then fleeing to debtor sanctuary, the creditor may petition the king for a writ directing execution on the asset as if the transfers had never occurred. Melville Madison Bigelow, *The Law of Fraudulent Conveyances* 11-12 (rev. ed. 1911) (1890).

personal action against transferees unless specially authorized by statute. *Id.* § 202.

As an exception to the general rule, NRS 112.220(2) permits actions resulting in judgments against certain transferees. But such judgments are only in the amount of either the creditor's claim or the value of the transferred property, whichever is less. *Id.* The statutory scheme does not allow a creditor to recover an amount in excess of the transferred property's value, or to recover against a nontransferee. And no similar exceptional authorization creates claims against nontransferees.

Furthermore, it does not make sense to apply an equitable remedy, voiding a transfer of property, against a party who never had possession of the transferred property. First, the third party has no control over the property and, therefore, cannot return it to the creditor. Second, once a creditor is made whole by a successful action against the transferor or transferee, he is no longer in need of an equitable remedy against a third party. True, NRS 112.210(1) permits creditors to obtain "any other relief the circumstances may require." But we agree with other jurisdictions that this language, taken from the Uniform Fraudulent Transfer Act, "was intended to codify an existing but imprecise system," not to create a new cause of action. *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1276 (Fla. 2004); *see* NRS 112.250 ("This chapter must be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."). *Compare* Unif. Fraudulent Transfer Act § 7, 7A U.L.A. 155-56 (2006), *with* NRS 112.210.

Thus, NRS 112.210(1) gives the creditor an equitable right to the property, not a claim for damages. The Legislature did not create a claim against nontransferees. And although NRS 112.240 incorporates the traditional rules of law and equity into the statutory fraudulent transfer law, we agree with other states that such savings clauses do not create entirely new causes of action, such as civil conspiracy. *See Forum Ins. Co.*, 151 F. Supp. 2d at 1148; *Freeman*, 865 So. 2d at 1276. We therefore conclude that Nevada law does not recognize claims against nontransferees under theories of accessory liability. Because we so conclude, we do not need to decide whether the district court properly analyzed the accessory liability issues or whether the district court's factual findings on these issues were supported by substantial evidence. We affirm the district court's judgment.

*Proper documentation of costs*

The second contested order in these consolidated appeals concerns the district court's award of costs to Woods & Erickson. Cadle argues that the district court erred because the documentation was insufficient to justify some of the costs awarded. We agree.

NRS 18.020 and NRS 18.050 give district courts wide, but not unlimited, discretion to award costs to prevailing parties. Costs awarded must be reasonable, NRS 18.005; *Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1352, 971 P.2d 383, 385 (1998), but parties may not simply estimate a reasonable amount of costs. *See Gibellini v. Klindt*, 110 Nev. 1201, 1205-06, 885 P.2d 540, 543 (1994) (holding that a party may not estimate costs based on hours billed). Rather, NRS 18.110(1) requires a party to file and serve "a memorandum [of costs] . . . verified by the oath of the

party . . . stating that to the best of his or her knowledge and belief the items are correct, and that the costs have been necessarily incurred in the action or proceeding." Thus, costs must be reasonable, necessary, and actually incurred. We will reverse a district court decision awarding costs if the district court has abused its discretion in so determining. *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 276, 112 P.3d 1082, 1092 (2005).

In *Bobby Berosini, Ltd.*, we explained that a party must "demonstrate how such [claimed costs] were necessary to and incurred in the present action." 114 Nev. at 1352-53, 971 P.2d at 386. Although cost memoranda were filed in that case, we were unsatisfied with the itemized memorandum and demanded further justifying documentation. *Id.* It is clear, then, that "justifying documentation" must mean something more than a memorandum of costs. In order to retax and settle costs upon motion of the parties pursuant to NRS 18.110, a district court must have before it evidence that the costs were reasonable, necessary, and actually incurred. *See Gibellini,* 110 Nev. at 1206, 885 P.2d at 543 (reversing award of costs and remanding for determination of actual reasonable costs incurred).

Without evidence to determine whether a cost was reasonable and necessary, a district court may not award costs. *PETA*, 114 Nev. at 1353, 971 P.2d at 386. Here, the district court lacked sufficient justifying documentation to support the award of costs for photocopies, runner service, and deposition transcripts.[5] Woods & Erickson did not present

---

[5]The other costs awarded, however, service costs, parking fees, and filing fees, were supported by sufficient justifying documentation,
*continued on next page . . .*

the district court with evidence enabling the court to determine that those costs were reasonable and necessary.

*Photocopies*

Woods & Erickson did not submit documentation about photocopies other than an affidavit of counsel stating that each and every copy made was reasonable and necessary. In *PETA*, we rejected a claim for photocopy costs because only the date and cost of each copy were provided. *See PETA*, 114 Nev. at 1353, 971 P.2d at 386. We have also held that documentation substantiating the reason for each copy "is precisely what is required under Nevada law." *Vill. Builders 96*, 121 Nev. at 277-78, 112 P.3d at 1093.

Here, Woods & Erickson failed to show why the copying costs were reasonable or necessary. The affidavit of counsel *told* the court that the costs were reasonable and necessary, but it did not "*demonstrate* how such fees were necessary to and incurred in the present action." *PETA*, 114 Nev. at 1352-53, 971 P.2d at 386 (emphasis added). Because the district court had no evidence on which to judge the reasonableness or necessity of each photocopy charge, we conclude that the court lacked justifying documentation to award photocopy costs.

*Runner service*

The district court concluded that it lacked documentation for runner service costs. It awarded costs for runner service anyway, albeit

---

. . . *continued*

including receipts or court records, and we affirm the remainder of the order awarding costs.

for the lower amount of $350, because $581.65 was "an odd number." Because the district court lacked documentation, there is no way that it could have determined whether the cost was reasonable or necessary. In addition, the $350 figure appears to be the kind of guesstimate of which we disapproved in *Gibellini v. Klindt*, 110 Nev. at 1206, 885 P.2d at 543 (holding that a party may not estimate costs based on hours billed). The district court therefore erred by awarding runner service costs after concluding that it lacked sufficient justifying documentation.

### Deposition transcripts

The district court awarded costs for deposition transcription in the amount of $1,921.25. Yet the record shows that Woods & Erickson only submitted transcription invoices totaling $1,116.75. In an affidavit, Woods & Erickson's counsel stated that counsel was "only able to track down invoices for certain of the transcript expenses." The affidavit does not provide any itemization of, or justification for, the transcripts without invoices. *Cf. Vill. Builders*, 121 Nev. at 277-78, 112 P.3d at 1093 (holding Nevada law requires justifying documentation to substantiate the reason for each photocopy). Because there was no documentation of costs exceeding $1,116.75, the district court lacked sufficient evidence to award $1,921.25, and the award for this item must be reduced to $1,116.75.

### CONCLUSION

We hold that Nevada law does not recognize accessory liability for fraudulent transfers. Therefore, we affirm the district court's judgment on the merits. We further hold that the district court erred by awarding photocopy costs, runner service costs, and deposition

SUPREME COURT
OF
NEVADA

(O) 1947A

transcription costs above $1,116.75 because no evidence was presented showing that those costs were reasonable, necessary, and actually incurred. We thus reverse the portion of the district court's order awarding costs for the photocopy and runner service expenses, and we affirm as modified the award of costs for deposition transcripts. We have considered Cadle's other arguments, including those concerning the attorney fees award, and conclude that they lack merit. Accordingly, we affirm in part and reverse in part, as specified above.

_____, J.
Cherry

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering