[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12401
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 11, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:09-cv-02162-VMC-TGW

RITA LAWRENCE,
individually and on behalf of all others
similarly situated,
BARBARA KANN,
individually and on behalf of all others
similarly situated,
RAYMOND K. FERWERDA,
individually and on behalf of all others
similarly situated,

Plaintiffs - Appellants,

versus

BANK OF AMERICA, N.A.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 11, 2012)

Before TJOFLAT, EDMONDSON, and FAY, Circuit Judges.

PER CURIAM:

This case involves a putative class action. Plaintiffs Rita Lawrence, Barbara Kann, and Raymond K. Ferwerda appeal from an order dismissing their complaint against Bank of America, and closing the case. On appeal, Plaintiffs argue the district court erroneously concluded that Plaintiffs had failed to plead facts sufficient to raise a plausible inference that Bank of America had knowledge of a Ponzi scheme and substantially assisted in its operations. Plaintiffs further argue that the court erred in denying Plaintiffs' request for leave to amend their initial complaint. For the reasons set forth below, we affirm.

I.

A. Background

We restate the following facts as alleged by Plaintiffs, accepting them as true and construing them in the light most favorable to Plaintiffs.[1] From 2006 until early 2009, Beau Diamond ("Diamond"), through his company Diamond Ventures LLC, operated a Ponzi scheme by convincing investors to deposit millions of dollars into a Bank of America account ("Diamond Ventures Account") he controlled for the purpose of trading that money in the off-exchange

_____

[1] *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

2

foreign currency markets. Diamond guaranteed both the safety of the total principal amount of money deposited by the investors, and a monthly profit of between 2.75% and 5%. Based on the substantial deposits made by Diamond, the Diamond Ventures Account was transferred to Bank of America's Premier Banking Division. The Premier Banking Division was known for providing its clients with "close, personal attention," by more in-depth review of the clients' accounts. To obtain such review, Premier Banking Representatives could access the Diamond Ventures Account and obtain daily updates on major deposits and wire transfers.

Plaintiffs alleged Bank of America had knowledge of Diamond's fraudulent activity, not only through his account activity, but also because of information he provided. Diamond made exceptionally large deposits into the Diamond Ventures account. Tellingly, millions of dollars streamed out of the Diamond Ventures Account to fund personal and gambling expenditures for Diamond. Additionally, Diamond engaged in atypical business transactions, such as numerous wire transfers unrelated to any legitimate business activity. And as to the information Diamond provided to Bank of America, he informed Bank of America of his personal history and the nature of his business, which was an "investment club." Bank of America does not permit investment clubs.

3

Plaintiffs further alleged that Premier Banking Representatives knew of Diamond's fraudulent activity through their standard review of Diamond's account statements. Account statements reflected that approximately $37,600,000 was deposited by 200 investors, and $15,400,000 was transferred from Diamond Ventures to foreign exchange companies. However, account statements did not indicate that Diamond profited from money transferred to foreign exchange companies. Nevertheless, Diamond sent investors 2,300 checks totaling more than $15,600,000. The Premier Banking Representatives, therefore, should have known that the money being sent to investors came from new client deposits, rather than profits from foreign exchange companies.

B.    Procedural History

Plaintiffs' complaint alleged three causes of action against Bank of America, all based on the theory of aiding and abetting: (1) common law fraud; (2) conversion; and (3) breach of fiduciary duty. The causes of action were based on Bank of America's knowing support and facilitation of the Ponzi scheme operated by Diamond. Bank of America moved to dismiss the complaint, arguing that Plaintiffs had failed to comply with Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss.

Plaintiffs thereafter moved for reconsideration of the dismissal order. In the

4

alternative, Plaintiffs requested leave to amend their initial complaint to include newly acquired evidence. The newly acquired evidence included an employee of Bank of America, a Premier Banking Representative, allegedly informing another customer that he knew of Diamond's investment club and that other customers were happy with Diamond. The district court denied the motion, concluding, in part, that Plaintiffs' belated grounds for amendment were futile.[2]

## II.

We review *de novo* a district court's order granting a motion to dismiss. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). We review for abuse of discretion the district court's refusal to grant leave to amend, although we exercise *de novo* review as to the denial of leave to amend based on futility. *SFM Holdings Ltd v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1336 (11th Cir. 2010).

## III.

Plaintiffs first argue that the district court erroneously dismissed their complaint because the allegations are more than sufficient to raise a plausible inference that Bank of America had knowledge of the Ponzi scheme and substantially assisted in its operations. We disagree.

---

[2] We decline to address all bases of the district court's conclusion. We address only whether Plaintiffs' grounds for amendment were futile because it is dispositive.

To survive a motion to dismiss, the Supreme Court has held that a plaintiff must include in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, --, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555-56).

Given that all of Plaintiffs' claims are predicated on the theory of aiding and abetting, we need only consider whether Plaintiffs adequately alleged the elements of such a claim. In Florida,[3] a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor. *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); *ZP No. 54 Ltd. P'ship v. Fid. &*

---

[3] We apply Florida law because the district court had diversity jurisdiction over this matter, and "[f]ederal courts adjudicating state law claims apply the substantive law of the state where they render decisions." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

*Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005).

Reviewing the complaint, we agree with the district court that Plaintiffs' allegations fall short of *Twombly's* requirements. Plaintiffs alleged that Bank of America authorized numerous deposits, withdrawals, and wire transfers involving large amounts of money and that the Premier Banking Representatives received substantial commissions. Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability. Florida law does not require banking institutions to investigate transactions. *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968); *cf. O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003) (finding that banks have the "right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds"). Therefore, Bank of America, in providing only routine banking services, was not required to investigate Diamond's transactions. To be liable, the bank would have had to have actual knowledge of Diamond's fraudulent activities. These allegations simply fail to make that "plausible." *Twombly*, 550 U.S. at 570.

IV.

7

The second issue we must consider is whether the district court was required to permit amendment of the initial complaint. Plaintiffs argue that they were improperly denied leave to amend the complaint because futility was never demonstrated by the district court and is not obvious based on the pleadings. Again, we disagree.

"Denial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)).

Plaintiffs argue that their new allegations were sufficient to state a claim. For example, Plaintiffs sought to include allegations that a Premier Banking Representative informed another Bank of America customer that he knew about Diamond's investment club, and his Diamond Ventures customers were happy with their investment. As a result, the customer invested an additional amount of money in Diamond Ventures. This information was sufficient, Plaintiffs contend, to demonstrate Bank of America's involvement in the Ponzi scheme.

Like the district court implicitly found, we find that it is not plausible that positive comments about Diamond Ventures necessarily establishes Bank of America's participation in a Ponzi scheme. Rather, such a positive comment

8

would more easily be interpreted to demonstrate Bank of America's lack of awareness of Diamond's fraudulent activities. Accordingly, there was no abuse of discretion in denying the request for leave to amend the complaint because this amendment would have been futile.

V.

The district court properly concluded that Plaintiffs' allegations regarding actual knowledge failed to state a claim for relief under Florida aiding and abetting law. In addition, the district court acted within its discretion when it denied Plaintiffs' futile request to amend the complaint.

**AFFIRMED.**