[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 12-13436 & 12-14073
_____

D.C. Docket No. 9:11-cv-80331-DTKH


JONATHAN E. PERLMAN,
Esq., as court appointed Receiver of
Creative Capital Consortium, LLC, et al.,

                                                            Plaintiff-Appellant,

versus

BANK OF AMERICA, N.A.,

                                                            Defendant-Appellee.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 28, 2014)

Before MARTIN, JORDAN, and SUHRHEINRICH,[*] Circuit Judges.

PER CURIAM:

_____
[*] Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Through Creative Capital Consortium, LLC, and several related entities, George Theodule promised investors that they could double their money, with little or no financial risk, within 90 days.  Despite the outlandish promised rate of return, or perhaps because of it, many persons and entities gave Mr. Theodule their money.  But the rate was, of course, too good to be true; Mr. Theodule operated a massive Ponzi scheme in which he used the money of newer investors to make it seem as though the older investors were reaping the incredible profits he had promised.  By the time the Securities and Exchange Commission filed suit in late 2008, Mr. Theodule and his companies had pilfered tens of millions of dollars.

Jonathan Perlman, the court-appointed receiver for Creative Capital Consortium and its related entities, sued Bank of America -- where Mr. Theodule and his entities had personal and business accounts -- alleging in relevant part that it aided and abetted a breach of fiduciary duty, and that it violated the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 et seq., by acting as the initial transferee of millions of dollars fraudulently transferred between accounts maintained at Bank of America.  As receiver of the Theodule entities (and an alleged creditor within the meaning of the FUFTA), Mr. Perlman sought to void the fraudulent transfers and recover their value.

2

The district court dismissed all of the claims with prejudice, ruling that the atypical banking transactions alleged in the amended complaint were insufficient to establish aiding and abetting liability, and that Bank of America could not be liable under FUFTA because it acted as a "mere conduit" for the transfers. The district court also denied Mr. Perlman's Rule 59(e) motion to alter and amend the judgment because it was untimely.

On appeal, Mr. Perlman argues that the district court should not have dismissed his FUFTA claims based on the "mere conduit" defense, that the district court should have granted him leave to amend, and that the district court erred in denying his Rule 59(e) motion. Although we conclude that the district court was not required to grant leave to amend, and properly denied the Rule 59 motion, we reverse the dismissal of the FUFTA claims. The "mere conduit" theory is an affirmative defense that Mr. Perlman did not have to anticipate or negate in his complaint, and that defense was not apparent from the face of the amended complaint.

# I[1]

"[T]o survive a motion to dismiss, a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)

---

[1] Judges Martin and Jordan join in this portion of the opinion.

3

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]"  *Twombly*, 550 U.S. at 556.

The district court, relying on our unpublished decision in *Lawrence v. Bank of America, N.A.,* 455 F. App'x 904, 907, 2012 WL 89904 (11th Cir. 2012) (holding that atypical transactions are insufficient to give a bank "providing only routine banking services" actual knowledge of an alleged Ponzi scheme -- because Florida law does not require such a bank to "investigate [a client's] transactions" -- and affirming dismissal of claims alleging that bank aided and abetted a fraudulent scheme), dismissed all of Mr. Perlman's claims with prejudice.  It concluded that Mr. Perlman had merely pled the existence of atypical transactions which, in its view, constituted an insufficient predicate for establishing aiding and abetting liability under Florida law.  It then extended the logic of *Lawrence* -- a non-FUFTA case -- to encompass Mr. Perlman's FUFTA claims, and held that the four corners of the operative complaint conclusively demonstrated that Bank of America was a mere conduit for the assets at issue.  *See Perlman v. Bank of Am., N.A.*, No. 11-80331-CV, 2012 WL 1886617, at *2 (S.D. Fla. May 23, 2012) ("[T]he face of the Amended Complaint makes clear that the Bank acted as a mere conduit of Theodule's fraudulent transfers–that is, that the Bank never exercised dominion or control over the funds and that the Bank acted with good faith.").

4

Exercising plenary review, *see Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1248 (11th Cir. 2013), we reverse the dismissal of the FUFTA claims.

The "mere conduit" theory, as set out in *In re Harwell,* 628 F.3d 1312 (11th Cir. 2010), is an "equitable exception" to the fraudulent transfer provisions in the Bankruptcy Code.  *See* 11 U.S.C. §§ 548, 550.  It is available to persons or entities who are initial recipients of fraudulent transfers but who are "'mere conduits' with no control over the fraudulently-transferred funds."  *See In re Harwell,* 628 F.3d at 1322.  Significantly, however, the "mere conduit" theory must be affirmatively proved by the one seeking to obtain its protection.  As we said in *In re Harwell,* transferees who want to come within the equitable exception to §§ 548 and 550 of the Bankruptcy Code "must establish (1) that they did not have control over the assets received, i.e., that they merely served as a conduit for the assets that were under the actual control of the debtor-transferor[,] *and* (2) that they acted in good faith and as an innocent participant in the fraudulent transfer."  *Id.* at 1323.  This two-pronged test entails "a flexible, pragmatic, equitable approach of looking beyond the particular transfer in question to the circumstances of the transaction in its entirety."  *Id.* at 1322 (citing *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988)).

5

We have not yet addressed whether the "mere conduit" affirmative defense applies in FUFTA actions. Nor have the Florida courts.[2] Assuming, however, that this defense does apply, it should not have served as the basis for dismissal of Mr. Perlman's FUFTA claims. As a general matter, a plaintiff is "not required to negate an affirmative defense in [his] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (punctuation omitted). *See also Payne v. Humana Hosp. Orange Park*, 661 So. 2d 1239, 1241 (Fla. 1st DCA 1995) ("[T]he complaint need not anticipate affirmative defenses[.]"). Although a "complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint," *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011), the "mere conduit" defense was not apparent from the four corners of the amended complaint.

According to Mr. Perlman's allegations, Bank of America was not a mere conduit. Mr. Theodule and his entities initially did their banking at Washington Mutual Bank and then Wachovia Bank, but those financial institutions closed their accounts by July of 2008 "due to the apparent money laundering nature of the [account] activit[ies]." By then, pursuant to its anti-money laundering policies,

---

[2] A number of courts interpreting the Uniform Fraudulent Transfer Act (on which the FUFTA is based) have concluded that "the transferee's knowing participation [in the transferor's fraudulent scheme] is irrelevant under the [Act]." *Warfield v. Byron,* 436 F.3d 551, 557-59 (5th Cir. 2006) (surveying cases). *Accord Frank Sawyer Trust of May 1992 v. Commissioner of Internal Revenue,* 712 F.3d 597, 606-07 (1st Cir. 2007); *Boyer v. Crown Stock Dist., Inc.,* 587 F.3d 787, 792 (7th Cir. 2009).

and its "Know your Customer" program, Bank of America had implemented certain due diligence requirements for new customers. These included "obtaining information from the new customer regarding the background and nature of the new customer's business operations," which Bank of America verified by "various means[,] including running internet searches, checking public records, and contacting the customer's prior banker(s)." Bank of America also did not open, and did not allow, "investment club" accounts, as such accounts were "a well known indicator of a Ponzi scheme operation." If Bank of America "contacted [Mr.] Theodule's bankers at Wachovia, as was its custom and policy, [it] knew [Mr.] Theodule's accounts there had been ordered closed for money laundering activities." Nonetheless, Bank of America agreed to open accounts for Mr. Theodule and his entities – including at least 20 investment club accounts for Theodule-related entities -- and make all transfers they requested, even though it "knew that the transfers were part of a Ponzi scheme." Many of these investment club accounts had the words "Investment Club" in their title. Millions of dollars flowed into the investment club accounts, only to be transferred to Mr. Theodule's personal accounts. Within the first 30 days of opening the accounts at Bank of America, Mr. Theodule took out $1.3 million of the investment clubs' money that had come into his own personal accounts.

7

One of the defrauded investors, who had obtained an equity line on her home to invest with one of the investment clubs, found out through a Bank of America vice-president/branch manager that the club, instead of depositing her $80,000 check, had cashed it.  When the customer expressed alarm, the vice president/branch manager advised her that "there was no cause for concern" because she had a receipt.  Acting on this advice, the customer took no further action.  The customer never got any of her money back, and Bank of America is now threatening to foreclose on her home because she cannot make the payments on the equity line.

These allegations, at the very least, cast some doubt on Bank of America's good faith, and preclude a finding that the "mere conduit" defense was apparent from the face of the amended complaint.  *Cf. Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1273 (11th Cir. 2008) (characterizing "good faith" as a "fact-intensive issue").  Bank of America is, of course, free to assert the "mere conduit" affirmative defense at summary judgment once discovery is completed.

## II[3]

As noted earlier, the district court denied leave to amend and denied Mr. Perlman's Rule 59 motion.  We review both of these rulings for abuse of discretion.  *See  Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1178 (11th

---

[3] Judges Jordan and Suhrheinrich join in this portion of the opinion.

8

Cir. 2013) (leave to amend); *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985) (motion to alter or amend judgment under Rule 59(e)).

The district court properly exercised its discretion. First, the footnote in which Mr. Perlman sought leave to amend -- contained in his opposition to Bank of America's motion to dismiss -- did not indicate what additional facts he intended to allege in a proposed second amended complaint. The request was therefore legally insufficient. *See Wagner v. Daewoo Heavy Indus. Am. Corp.,* 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (concluding that the district court did not abuse its discretion in denying request for leave to amend where the request was merely included in a footnote and did not "describe the substance of [the] proposed amendment"). Second, Mr. Perlman filed his Rule 59(e) motion one day beyond the 28-day deadline. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). As a result, the district court could not have granted relief. *See Green v. Drug Enforcement Admin.*, 606 F.3d 1296, 1300

9

(11th Cir. 2010) ("To help preserve the finality of judgments, a court may not extend the time to file a Rule 59(e) motion.").[4]

## III

The district court did not abuse its discretion when it denied Mr. Perlman's request for leave to amend, and when it denied his Rule 59(e) motion.   The district court erred, however, in dismissing the FUFTA claims with prejudice under the "mere conduit" affirmative defense.   We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

[4] To the extent that Mr. Perlman argues that the district court should have granted relief under Rule 60, we likewise find no abuse of discretion.

10

MARTIN, Circuit Judge, concurring in part and dissenting in part:

I concur with Part I of the majority opinion, which reverses the District Court's dismissal of Mr. Perlman's claims under the Florida Uniform Fraudulent Transfers Act (FUFTA). I respectfully dissent from Part II, however, because I believe that the District Court abused its discretion when it dismissed Mr. Perlman's aiding and abetting claims without granting leave to amend.

If this were a typical case, I would agree with the majority that the District Court did not abuse its discretion by rejecting Mr. Perlman's abbreviated attempt to request leave to amend. See Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009). It is now well-established in our Circuit that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam); see also Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) (per curiam) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

But this is not a typical case. When Bank of America filed its motion to dismiss the Amended Complaint, its second motion to dismiss filed in the District Court proceeding, Mr. Perlman had no reason to believe that his aiding and abetting claims were in jeopardy of being dismissed. Indeed, the District Court

11

had already denied Bank of America's challenge to the identical aiding and abetting claims when it moved to dismiss Mr. Perlman's <u>original</u> complaint. In this circumstance, barring an intervening change in controlling law[1] or a warning that the District Court was inclined to reverse itself, a plaintiff should not be expected to come forward with a formal request for leave to amend. As a practical matter, it is unclear to me how we can expect a plaintiff to draft any amendment when the District Court has already affirmatively ruled that the very same pleadings were sufficient.

On this issue, I find instructive this Court's decision in <u>Bryant v. Dupree</u>, 252 F.3d 1161 (11th Cir. 2001) (per curiam). In <u>Bryant</u>, the District Court denied a motion to dismiss filed by the defendants. <u>Id.</u> at 1163. Following interlocutory appeal, the defendants renewed their motion to dismiss, and the plaintiffs filed a response, which included a request for leave to amend. <u>Id.</u> The District Court, in a reversal from its earlier position, dismissed the complaint with prejudice. <u>Id.</u> We were not satisfied, however, with the District Court's reasons for denying leave to amend. <u>Id.</u> at 1162–63. Specifically, we emphasized that the plaintiffs had never been provided notice of the possible deficiencies in their complaint. <u>Id.</u> at 1164.

---

[1] I recognize that the District Court relied heavily on this Court's unpublished opinion in <u>Lawrence v. Bank of America, N.A.</u>, 455 F. App'x 904 (11th Cir. 2012) (per curiam), which was decided during the interim between the two motions to dismiss. <u>Lawrence</u>, however, was an unpublished opinion and therefore does not constitute binding precedent. <u>See</u> 11th Cir. R. 36-2.

12

To the contrary, "[r]ather than indicating infirmities in the complaint, the district court's prior opinion created the exact opposite impression." Id.

Although I recognize that Bryant was decided before our en banc decision in Wagner v. Daewoo Heavy Industries America Corp., 314 F.3d 541 (11th Cir. 2002) (en banc), the principles set forth in Bryant apply with equal force in this case. Because there had been no intervening change in controlling law or any indication that the District Court was planning to change its mind, Mr. Perlman was likely shocked to learn that the same judge who had upheld his aiding and abetting claims just five months earlier now found them insufficient. In this extraordinary circumstance, a plaintiff should not be expected to include a proposed amendment in his request for leave to amend. He would simply have no way of knowing how or why his complaint is insufficient.

Finally, it is important to keep in mind the underlying reasons why we require plaintiffs to provide their proposed amendments to the District Court in advance. Until this Court's en banc decision in Wagner, District Courts were required to allow plaintiffs to amend their complaints as long as a more carefully drafted complaint "might" state a claim. Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam). Under the Bank rule, however, plaintiffs had no incentive to amend their complaints before the District Court ruled on a motion to dismiss. See Wagner, 314 F.3d at 543. If their claims were dismissed, plaintiffs knew they

13

would get at least "two bites at the apple" because they had a guaranteed right to amend in their back pocket.  Id.  This is why we overruled Bank and held that District Courts are not generally required to grant a plaintiff leave to amend when the plaintiff never requested it.  Id. at 542.

Here, however, there was no danger that Mr. Perlman was trying to get two bites at the apple because his first bite had already made its mark.  As far as Mr. Perlman was concerned, the District Court had already told him his aiding and abetting claims passed muster once, and so there was no need for him to think about how to shore up the insufficiencies in his complaint.  Without the benefit of prognostication, Mr. Perlman reasonably assumed that the District Court would reject Bank of America's second motion to dismiss in the same way it dismissed the first one.  This is why I believe that a District Court should be required to grant leave to amend in this circumstance unless there is an intervening change in controlling law or the District Court otherwise provides notice that it is reconsidering its earlier ruling.

For these reasons, I would hold that the District Court abused its discretion here by dismissing Mr. Perlman's aiding and abetting claims with prejudice, and I would remand this case to the District Court to provide Mr. Perlman with an opportunity to amend his aiding and abetting claims.

14

SUHRHEINRICH, Circuit Judge, concurring in part and dissenting in part:

I disagree with the majority's conclusion that the Amended Complaint states a claim for fraudulent transfer under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 et seq. ("FUFTA"), for the following reasons.

First, as this court recently observed, "[m]ere conduits, such as lawyers and banks, do not have an affirmative duty to investigate the underlying actions or intentions of the transferor." *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1324 (11th Cir. 2010). Also, as this court has also observed—albeit in an unpublished decision but one that applies Florida law—allegations of "atypical transactions" "are insufficient under Florida law to trigger liability. Florida law does not require banking institutions to investigate transactions." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (6th Cir. 2012) (per curiam).

Second, a "recipient" is not the "initial transferee" unless it exercises some control or receives some benefit, such as in a debtor-creditor relationship, with the funds at issue. *See Bonded Fin. Servs., Inc. . European Am. Bank*, 838 F.3d 890, 893 (7th Cir. 1988) ("Although the Bankruptcy Code does not define "transferee", and there is no legislative history on the point, we think the minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes."). Indeed, this Court has stated that: "When trustees seek recovery of allegedly fraudulent conveyances from banks, the

15

outcome of the cases turn on whether the banks actually controlled the funds or merely served as conduits, holding money that was in fact controlled by either the transferor or the real transferee." *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 813 F.2d 1196, 1200 (11th Cir. 1987) (noting that a bank controls funds where it receives money from a debtor to pay off a debt owed to the bank).

Third, the Florida Supreme Court emphasized that "FUFTA was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party (like [the bank] in this case) for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer." *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272 (Fla. 2004). In *Freeman*, the Florida Supreme Court rejected the creditors' aiding and abetting fraudulent transfer claims against a bank after the bank transferred funds on behalf of a Ponzi-schemer, even after the schemer was sued and an injunction freezing the accounts at the bank had been issued.

Fourth, the Eleventh Circuit created the "mere conduit" equitable exception to fraudulent transfer liability "to prevent the unjust or inequitable result of holding an innocent transferee liable for fraudulent transfers where the innocent transferee is a mere conduit and had no control over the funds transferred." *Id.* at 1324. *See generally* Jessica D. Gabel & Paul R. Hage, *Who is a "Transferee" Under Section 550(a) of the Bankruptcy Code?: The Divide Over Dominion, Control and Good*

16

*Faith in Applying the Mere Conduit Defense*, 21 NORTON J. BANKR. L. & PRAC. 1 Art. , at 6 (2012) (noting that "[r]egardless of the test employed, courts seem to agree that the term 'transferee' must mean something different from anyone who simply touches the avoided transfer, such as an agent or a courier. . . . [S]uch an approach tracks the function of the bankruptcy trustee's avoiding powers: to recoup money from the real recipient[.]" (internal quotation marks and citation omitted)).

Fifth, Florida law allows a court to consider affirmative defenses in resolving a motion to dismiss where the complaint "affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1277 (11th Cir. 2004) (citations omitted).

The Amended Complaint affirmatively shows that the defense applies at this stage (i.e. is apparent from the four corners of the complaint) because it does not allege facts establishing that the bank actually controlled the funds at issue, making the bank an initial transferee. It alleges simply that the bank knew, from its customs or policies, or should have known, based on atypical transactions, that the money transfers were part of a Ponzi scheme. Although the customer threatened with foreclosure by the bank is a sympathetic fact, this allegation does not even involve a transfer of funds by the debtor to the bank. *Cf. Chase & Sanborn*, 848 F.2d at 1199-1200 (noting that where a bank receives funds from a debtor to pay

17

off a loan, the bank has control over the funds and is therefore an initial transferee).

Thus, the Amended Complaint fails to satisfy *Iqbal*'s requirement that the plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Again, "the misconduct alleged" here is fraudulent transfer under FUFTA. *Freeman* makes clear that an aiding and abetting theory is not available under FUFTA, which is in essence what Perlman's claims are, given the lack of control over the funds.

For these reasons, I would affirm the district court's dismissal of the FUFTA claims.